IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

   *Plaintiff*,

v.

ROBERT T. CURRY,

   *Defendant*.

Criminal No. ELH-17-0387

**MEMORANDUM OPINION**

Robert T. Curry, defendant, was convicted in 2018 of conspiracy to distribute heroin, for which he is serving a sentence of 84 months' imprisonment at FCI Morgantown, with credit dating to August 15, 2017. ECF 32. Defendant filed a pro se motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF 34. He also provided several exhibits. Curry subsequently amended his submission. ECF 36. Thereafter, through appointed counsel, defendant filed a memorandum in support of his motion (ECF 37), along with additional exhibits. ECF 39. I shall refer to ECF 34, ECF 36, and ECF 37 collectively as the "Motion."

The government opposes the Motion. ECF 44. It has submitted an exhibit. Defendant replied (ECF 47) and also submitted a supplemental reply. ECF 49.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall grant the Motion, in part.

**I. Background**

On July 20, 2017, a grand jury in the District of Maryland returned an indictment against the defendant (ECF 1), charging him with conspiracy to possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 846 (Count One), and possession with intent to

distribute heroin, in violation of 21 U.S.C. § 841 (Count Two).

The defendant entered a plea of guilty as to Count One of the indictment on November 2, 2017 (ECF 23), pursuant to a Plea Agreement. ECF 25. The plea was tendered under Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a term of imprisonment ranging from 72 months to 96 months of incarceration. *Id.* ¶ 7.

The Plea Agreement included a stipulation of facts. *Id.* at 8. According to the factual stipulation, between the beginning of 2016 and the defendant's arrest in April 2017, Curry was involved in trafficking heroin in and around western Maryland. *Id.* On April 17, 2017, defendant and a coconspirator drove to New York to obtain a new supply of heroin. *Id.* Their vehicle was stopped by law enforcement on the drive back from New York, and a canine alerted the officers to the presence of drugs. A search of the vehicle revealed approximately 300 grams of heroin as well as fentanyl in a bookbag that belonged to Curry. *Id.* The defendant admitted that he had taken at least eight trips to New York, where he usually purchased about 100 grams of heroin each time, for the purpose of distribution. *Id.*

Sentencing was held on February 2, 2018. ECF 31. According to the Presentence Investigation Report ("PSR," ECF 27), defendant was 31 years old. *Id.* at 3. He reported that he had surgery after his lungs collapsed when he was born and had two hernia repair surgeries in 2000. *Id.* ¶ 49. He also reported that he had been in a car accident in 2000, which resulted in back and leg issues and required him to take pain medication. *Id.* ¶ 50. Further, he started consuming alcohol at the age of 11 and began using opiates at the age of 14 after being prescribed pain medication for his hernia surgery. *Id.* ¶¶ 56, 57. He reported that his addiction to the medications increased over time and transformed into a daily heroin habit that lasted until he was arrested in April 2017. *Id.*

The PSR reflected a final offense level of 25. *Id.* ¶ 23. And, the defendant had nine criminal history points, resulting in a Criminal History Category of IV. *Id.* ¶ 33. The offense required a mandatory minimum term of imprisonment of five years, with a maximum exposure of 40 years. *See* 21 U.S.C. §§ 846, 841(b)(1)(B)(i); ECF 27, ¶ 72. Curry's advisory sentencing guidelines ("Guidelines") called for a sentence ranging between 84 months and 105 months of imprisonment. *Id.* ¶ 68. And, as noted, the "C Plea" called for a range of 72 to 96 months.

The Court imposed a sentence of 84 months' imprisonment, with credit for time served in federal custody from August 15, 2017. ECF 32. Therefore, the defendant has served about 41 months of his sentence, or roughly half. Curry is currently serving his sentence at FCI Morgantown, which is a minimum-security institution. He has a projected release date of August 2, 2023. ECF 34-2 at 3.

In addition to the pain and difficulties resulting from his previous surgeries, defendant now suffers from hepatitis C. ECF 37 at 1; *see* ECF 39-2 (Medical Records); ECF 44-1 (Medical Records). He submitted a request for compassionate release to the Warden on May 28, 2020. ECF 34-4 at 2. The request was promptly denied. *Id.* at 1.

## II. Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S § 3582(c)(1)(A)(i)

3

provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See, e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. The BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018); *see United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release. *McCoy*, 981 F.3d at 276.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after

considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with applicable policy statements issued by the Sentencing Commission.

Notably, "Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." *McCoy*, 981 F.3d at 276. But, in U.S.S.G. § 1B1.13, titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement," the Sentencing Commission addressed the "extraordinary and compelling reasons" that might warrant compassionate release. *See McCoy*, 981 F.3d at 276. The Sentencing Commission acted pursuant to 28 U.S.C. § 994(t), as well as § 994(a)(2)(C). *McCoy*, 981 F.3d at 276. However, as the *McCoy* Court observed, the policy statement was issued in 2006 and was last updated in November 2018, prior to the enactment of the First Step Act in December 2018. *Id.*

In particular, U.S.S.G. § 1B1.13 provides that, on motion by the Director of the BOP, the court may reduce a sentence where warranted by extraordinary or compelling reasons (§ 1B1.13(1)(A)); the defendant is at least 70 years old and has served at least 30 years in prison (§

5

1B1.13(1)(B)); the defendant is not a danger to the safety of any other person or to the community (§ 1B1.13(2)); and the reduction is consistent with the policy statement. U.S.S.G. § 1B1.13(3).

The Application Notes to U.S.S.G. § 1B1.13 indicate that compassionate release may be based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons." U.S.S.G. § 1B1.13 App. Notes 1(A)-(D). Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows:

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)  **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e*., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I)  suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence. Application Note 1(C) concerns Family Circumstances. Application Note 1(D), titled "**Other Reasons**," permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the

defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D). This is the "so-called, 'catch-all' category." *McCoy*, 981 F.3d at 276.

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. However, the Court may not rely on the Program Statement. Rather, the Court must consider the Sentencing Commission's policy statements. *United States v. Taylor*, 820 F. App'x 229, 229-30 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

As noted, "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction"). However, as indicated, the policy statement in § 1B1.13 of the Guidelines was last updated in November 2018, before the enactment of the First Step Act. Thus, it is only "directed at BOP requests for sentence reductions." *McCoy*, 981 F.3d at 276 (citing U.S.S.G. § 1B1.13). In other words, "[b]y its plain terms…§ 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." *Id.* at *7; *see also United States v. Zullo,* 976 F.3d 228, 230 (2nd Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108-12 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020).

Accordingly, "[a]s of now, there is no Sentencing Commission policy statement 'applicable' to [] defendants' compassionate-release motions, which means that district courts

7

need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *McCoy*, 981 F.3d at 283. Therefore, district courts are "'empowered…to consider any extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *Zullo*, 976 F.3d at 230).

Nevertheless, as the movant, the defendant bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 826-27; *see also United States v. Trotman*, 829 Fed. App'x 607, 608-9 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A), the court must consider the sentencing factors under 18 U.S.C. § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). But, compassionate release is a "rare" remedy. *Chambliss*, 948 F.3d at 693-94; *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III. COVID-19[1]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130,

---

[1] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

461 F. Supp. 3d 214, 223 (D. Md. 2020). That crisis is COVID-19.[2] The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918. *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393, (6th Cir. 2020). Indeed, for a significant period of time, life as we have known it came to a halt. Although many businesses and schools reopened for a period of time, many are again subject to closure or substantial restrictions, due to the virulent resurgence of the virus in recent weeks.

The Court must also underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh. Moreover, although many people who are

---

[2] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW (last accessed June 15, 2020).

stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted).  As of January 10, 2021, COVID-19 has infected more than 22.1 million Americans and caused over 372,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Jan. 10, 2021).

Unfortunately, there is currently no cure or proven treatment that is generally available for the virus.  But, the country has recently seen the rollout of two vaccines for COVID-19 (Pfizer and Moderna). The vaccines have primarily been made available to health care workers and the elderly in nursing homes. The rollout has not been as expeditious as had been hoped.

Notably, the BOP published "COVID-19 Vaccine Guidance" on January 4, 2021 (version 7.0). *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Jan. 4, 2021), https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf. Administration of the COVID-19 vaccine (Pfizer and Moderna) will "align with [recommendations of] the Centers for Disease Control and Prevention." *Id.* at 4. Therefore, once the BOP receives the vaccine, a prisoner at heightened risk will receive priority for receipt of the vaccine. *Id.* at 6.

The BOP reportedly received its first shipment of vaccines on December 16, 2020. Walter Pavlo, F*ederal Bureau of Prisons Starts Vaccination of Staff, Inmates Soon Thereafter*, Forbes (Dec. 21, 2020), https://www.forbes.com/sites/walterpavlo/2020/12/21/ federal-bureau-of-prisons-starts-vaccination-of-staff-inmates-soon-thereafter/?sh=5683b99aa96f.  Apparently,  the BOP plans to administer its initial allotment of the vaccine to BOP staff members. *Id.* The Court has not been informed as to when the BOP will begin distributing the vaccine to inmates.

Of relevance here, the Centers for Disease Control and Prevention ("CDC") has identified certain risk factors that increase the chance of severe illness. Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, and again on July 17, 2020, the CDC revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. Then, on November 2, 2020, to reflect the most recently available data, the CDC again revised its guidance. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://bit.ly/38S4NfY. According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; smoking; pregnancy; and Type 2 diabetes. *Id.* The CDC has also indicated that the risk for severe illness from COVID-19 increases with age, with older adults at highest risk. *See Older Adults At Greater Risk of Requiring Hospitalization or Dying if Diagnosed with COVID-19*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 27, 2020), https://bit.ly/3g1USZ1.

In addition, the CDC created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include asthma, cerebrovascular disease, hypertension, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, overweight (where the BMI is between 25 and 30), pulmonary fibrosis, thalassemia (a type of blood disorder), and Type 1 diabetes. *See id.*

11

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed December 9, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see Cameron*, 2020 WL 2569868, at *1; *see also United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high."). Prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate themselves from others. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position

that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Former Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

As with the country as a whole, the virus persists in penal institutions.[3] As of January 10, 2021, the BOP had 123,119 federal inmates and 36,000 staff. And, as of the same date, the BOP reported that 6,176 inmates and 2,019 BOP staff currently tested positive for COVID-19; 35,647 inmates and 3,147 staff have recovered from the virus; and 183 inmates and three staff members have died from the virus. Moreover, the BOP has completed 97,398 COVID-19 tests. *See* https://www.bop.gov/coronavirus/ (last accessed Jan. 10, 2021). *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

With respect to FCI Morgantown, where the defendant is a prisoner, as of January 10, 2021, the BOP reported that five inmates and seven staff have tested positive for COVID-19 and 116 inmates and 16 staff have recovered at the facility. And, the facility has completed 411 tests. There have been no reported deaths. *See* https://www.bop.gov/coronavirus/ (last accessed Jan. 10, 2021).

### IV. Discussion

Today is Curry's 35th birthday. *See* ECF 27 at 3. He has moved for compassionate release on the ground that his health conditions render him particularly vulnerable to COVID-19. *See* ECF 37 at 3-5. In particular, defendant avers that he suffers from a respiratory condition and

---

[3] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2. More recently, on October 29, 2020, the *New York Times* reported that, "[i]n American jails and prisons, more than 252,000 people have been infected and at least 1,450 inmates and correctional officers have died" from COVID-19. *See Cases in Jails and Prisons*, N.Y. TIMES (Oct. 29, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.

On November 21, 2020, the *New York Times* reported that "U.S. correctional facilities are experiencing record spikes in coronavirus infections this fall. During the week of Nov. 17, there were 13,657 new coronavirus infections reported across the state and federal prison systems." *America Is Letting the Coronavirus Rage Through Prisons*, N.Y. TIMES (Nov. 21, 2020), https://www.nytimes.com/2020/11/21/opinion/sunday/coronavirus-prisons-jails.html.

limited lung function as a result of damage to his lungs sustained at birth. *Id.* at 4. Further, he suffers from hepatitis C. *Id.*; ECF 39-2. Moreover, defendant contends that he is not a danger to the community and that the factors under 18 U.S.C. § 3553(a) favor his release. *Id.* at 6-8.

The government opposes Curry's Motion at each step of the analysis. The government contends that defendant's conditions do not qualify as extraordinary and compelling reasons for release in light of CDC guidance. ECF 44 at 14-17. With respect to hepatitis C, the government notes that defendant does not indicate that his condition is affecting his liver such that he might be at an increased risk for COVID-19 complications. *Id.* at 16. Further, the government argues that Curry does not demonstrate that the complications he suffered at birth currently have any impact on his lung function. *Id.* at 16 n.11. And, in any event, the government maintains that Curry is a danger to the public and that the § 3553(a) factors militate against a reduction of his sentence. *Id*. at 25-30.

### A. Extraordinary and Compelling Reasons

Curry was diagnosed with hepatitis C in 2012. ECF 44-1 at 8. According to the CDC, hepatitis C is a liver infection that may result in long-term, chronic infections affecting the liver. *See Viral Hepatitis: Hepatitis C Information*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/hepatitis/hcv/index.htm (last accessed Jan. 11, 2021). And, the CDC advises that "chronic liver disease…might increase you risk for severe illness from COVID-19." *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://bit.ly/38S4NfY.

With respect to hepatitis C specifically, the CDC notes that it currently has "no information about whether people with hepatitis B or hepatitis C are at an increased risk for getting COVID-19 or having severe COVID-19." *What to Know about Liver Disease and COVID-19*, CTRS. FOR

15

DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html (last accessed Jan. 10, 2021). But, courts have noted that hepatitis C weakens the immune system and may increase the risk of suffering from severe illness from coronavirus. *See, e.g.*, *United States v. Stephenson*, 461 F. Supp. 3d 864, 872 (S.D. Iowa 2020); *United States v. White*, No. 2:17-CR-00198-4, 2020 WL 3244122, at *4 (S.D.W. Va. June 12, 2020). And, numerous courts have granted compassionate release to defendants suffering from hepatitis C, among other conditions. *See, e.g.*, *United States v. Stephenson*, 461 F. Supp. 3d 864, 872 (S.D. Iowa 2020) (granting compassionate release to defendant who suffered from chronic hepatitis C even though government argued defendant was cured); *United States v. Ludwig*, 2020 WL 4547347, at *4 (E.D. Ca. Aug. 6, 2020) (finding defendant with hepatitis B and C was at increased risk of suffering serious consequences from COVID-19 even though government argues defendant's conditions are in remission); *United States v. Conner*, No. CR07-4095-LTS, 2020 WL 3053368, at *1 (N.D. Iowa June 8, 2020) (granting motion for compassionate release by petitioner with ongoing hepatitis B and C diagnosis); *United States v. White*, No. 2:17-CR-00198-4, 2020 WL 3244122, at *4 (S.D.W. Va. June 12, 2020) (granting compassionate release to prisoner suffering from a liver disease, hepatitis C and receiving treatment while at FCI Elkton).

Accordingly, I am satisfied that Curry satisfies the "extraordinary and compelling" prong of the § 3582 analysis.

### B. Sections 3142(g) and 3553(a)

Relief is appropriate under 18 U.S.C. § 3582(c)(1)(A) only if the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). To determine whether a defendant is a danger to the community, the Court must consider the factors under 18 U.S.C. § 3142(g), including the nature and circumstances of

16

the offense, the history and characteristics of the defendant, and the danger that release would pose to any person or the community.

The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), as required by 18 U.S.C. § 3582(c)(1)(A). These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

The government urges the Court to find that defendant is still a danger to the community, citing the seriousness of his offense and his criminal history. ECF 44 at 19-22. According to the government, the "specific danger posed by the defendant's release is clear and stark—that he might again obtain and distribute potentially lethal drugs into the community." *Id.* at 20. Further, the government contends that the factors under § 3553(a) militate in favor of denial of defendant's Motion. *Id.* at 21-22.

Defendant acknowledges the seriousness of his offense. ECF 37 at 6. But, he contends that it did not involve violence. *Id.* And, it was the product of his "consuming addiction" to heroin. *Id.*

Indeed, Curry's crime did not involve allegations of weapons or violence and his prior criminal record is comparatively minor. His most serious prior offenses include one handgun conviction (ECF 27, ¶ 27) and two drug offenses. *Id.* ¶¶ 30, 31. And, until the instant offense, the criminal justice system was rather lenient in punishing defendant. Almost all of his prior sentences were suspended, and a few resulted in short periods of incarceration. *See, e.g.*, ECF 27, ¶ 31 (sentence of seven years' imprisonment for drug conspiracy, with all but six months suspended). To the extent defendant was incarcerated, it was sometimes due to violations of his probation. *See*

ECF 27, ¶¶ 27, 29, 30. The longest sentence of actual incarceration that the defendant had ever received was for one year, for violation of probation in a theft case. *Id.* ¶ 29. And, in the State of Maryland, there is parole, so the defendant did not serve a full year of imprisonment. Thus, he has already served a sentence far longer than any prior sentence.

Notably, Curry has "maintained a blemish-free institutional record." ECF 37 at 7; *see* ECF 34-3 (Inmate Progress Report). Curry's conduct over the past three and a half years, while in BOP custody, is an important indicator of whether he remains a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)); *see also United States v. Scott*, CCB-95-202, 2020 WL 2467425, at *4 (D. Md. May 13, 2020). In this regard, it is also noteworthy that Curry quickly accepted responsibility for his criminal conduct. ECF 37 at 7.

Further, Curry maintains that he has a "considerable work history" and "remains immediately employable when released." *Id.* at 7. His release plan includes living with his father, Robert Curry, in West Virginia and working for "Stephen's Towing." ECF 34 at 5.

However, as noted, Curry has served less than 50% of his sentence, exclusive of good time credit. And, his sentence was at the bottom of the Guidelines range. Congress clearly regards the underlying offense as a serious one, given the mandatory minimum sentence of five years that was applicable. *See* 21 U.S.C. §§ 846, 841(b)(1)(B)(i).

In view of the serious nature of Curry's offense, his prior record, and the amount of time Curry has served to date, I conclude that Curry has not yet met the requirements for immediate compassionate release. However, considering Curry's health and personal history, the challenges posed by the pandemic, and his good behavior while in custody, I conclude that an 84-month

sentence is "greater than necessary" to comply with the purposes of incarceration. 18 U.S.C. § 3553(a).

The First Step Act "does not constrain the Court to decide between immediate release or no reduction at all, and instead leaves the Court discretion in its evaluation of the appropriate sentence once it finds 'extraordinary and compelling reasons.'" *United States v. Braxton*, Crim No. JKB-09-478, 2020 WL 4748536 (D. Md. Aug. 17, 2020). Thus, the Court's decision need not be confined either to immediate release or leaving the existing sentence intact. The statutory text of the First Step Act allows courts to "reduce the term of imprisonment," upon a finding of "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A).

Numerous district courts in both this Circuit and others have found that a court "need not choose between immediate, unconditional release or no relief at all" and have, accordingly, granted sentence reductions that did not result in immediate release. *See, e.g., United States v. Johnson*, No. RDB-07-0153, ECF No. 183 (D. Md. Oct. 14, 2020) (reducing sentence from 360 months to 300 months); *Braxton*, 2020 WL 4748536, at *5 (reducing sentence from 246 months to 168 months); *United States v. Marks*, Crim No. 03-6033L, 2020 WL 1908911, at *17 (W.D.N.Y. Apr. 20, 2020) (reducing sentence from 40 years to 20 years); *United States v. Arey*, Crim. No. 5:05-00029, 2020 WL 2464796 (W.D. Va. May 13, 2020) (reducing sentence but denying immediate release); *United States v. Day*, 474 F. Supp. 3d 790 (E.D. Va. 2020) (same); *see also United States v. Zullo*, 976 F.3d 228, 327 (2d Cir. 2020) ("It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence…").

### V. Conclusion

For the reasons set forth above, I conclude that a total sentence of 60 months is "sufficient,

but not greater than necessary" to comply with the purposes of incarceration. 18 U.S.C. § 3553(a).

Therefore, I shall grant the Motion (ECF 34; ECF 36; ECF 37), in part, pursuant to the Court's discretionary authority under 18 U.S.C. § 3582(c)(1)(A). I shall reduce Curry's sentence for Count One from 84 months to 60 months of incarceration. I shall adopt all of the previously imposed terms and conditions of supervised release, with added conditions of supervised release, as set forth in the attached Order, to include a six-month period of home confinement.

An Order follows, consistent with this Memorandum Opinion.

Date:   January 14, 2021                              /s/
                                           Ellen Lipton Hollander
                                           United States District Judge